✓ FILED ___ LODGE
___ RECEIVED ___ COPY
JUN 15 2016
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

THERESA GARNER
1688 South 236th Drive
Buckeye, Arizona 85326
623-386-8111

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| THERESA GARNER,<br>Plaintiff,<br>vs.<br>PENNY PRITZKER, UNITED STATES, SECRETARY, DEPARTMENT OF COMMERCE,<br>Defendant | **CASE NO. CV-16-00533-PHX-GMS**<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT (FAC)**<br><br>**HON. G. MURRAY SNOW** |

Plaintiff, hereby submits her First Amended Complaint (FAC), per Court Order, pursuant to LRCiv 15.1 (b), F.R.Civ.P 15 and Court Order Doc 3.

Attached hereto as Exhibit 1 is a copy of Plaintiff's first amended complaint (FAC).

Dated this 15th day of June, 2016.

Theresa Garner

Theresa Garner

# EXHIBIT 1

THERESA GARNER
1688 South 236th Drive
Buckeye, Arizona 85326
623-386-8111

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| THERESA GARNER,<br><br>Plaintiff,<br><br>vs.<br><br>PENNY PRITZKER, SECRETARY, UNITED STATES, DEPARTMENT OF COMMERCE,<br><br>Defendant | **CASE NO. CV-16-00533-PHX-GMS**<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT (FAC)**<br><br>**(DEMAND FOR JURY TRIAL) (DEMAND FOR AN APPOINTED ATTORNEY)**<br><br>**HON. G. MURRAY SNOW** |

**FIRST AMENDED COMPLAINT**

**(Retaliation, Harassment, Race, and Discrimination in Federal Employment)**

**Introduction**

1. Plaintiff, Theresa Garner, proceeding Propria Person, brings this action pursuant to 717 of Title VII, 42 U.S.C. §2000e-16 (2006) (herein "Title VII") *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829-38 (1976) to remedy acts of employment retaliation and discrimination perpetrated against a federal employee by the United States, Department of Commerce, (herein "United States" OR "DOC"), (Defendant) based upon her race (Black, American) alleging three causes of actions: (1) retaliation for engaging in

protected activities, and (2) that she was subjected to harassment, and (3) hostile work environment based upon that protected status, strictly prohibited by federal law. Plaintiff engaged in protected activities when she: (a) opposed a practice she considered to be discriminatory in District Court of Arizona Cases, (b) Plaintiff participated in protected activities by filing a charge of employment discrimination and cooperated with multiple ongoing EEO cases internal formal EEO investigations of alleged discriminatory practices, (c) An adverse action was taken resulting in multiple unjustified fraud charges from false employment references to the Arizona Unemployment Office (d) An adverse action was taken penalizing the Plaintiff from opposing a discriminatory employment practice, the Agency adverse actions included but does not limit approving EEO hours for an internal investigation, then reneging and removing the preapproved hours multiple times throughout the year, and (e) denial of job benefits including removal of retirement without notifying the Plaintiff, (f) reprimands and/or threats, (g) false and unjustified false employment income references given to the State of Arizona Unemployment Office resulting in fraud charges against the Plaintiff several times, (f) unjustified negative performance evaluations, (g) failure to pay approved EEO activities, and (h) limiting EEO protected activities, and (i.) harassment.

2. Throughout 2014 fiscal year, Defendant arbitrarily set limits and limitations which continued to change on the number of hours she may engage in EEO activities for which she may be compensated. Plaintiff further asserts that the Defendant limitations,

fluctuated and changed to different standards throughout the year 2014, without explanation or consultation.

3. Defendant justified the limitations by stating that the EEO activities should gradually decrease when the investigation had just begun from incidents months prior 2014 fiscal year.

4. EEO activities have not been paid consistent with an Agency instruction not to compensate the Plaintiff for EEO activities since March 1, 2014 and inconsistent with EEO government policies.

5. The retaliation here caused material financial losses with reduction of income and EEO activities limited, adverse actions caused directly by Defendant's retaliatory, hostile and harassment conduct of more than $15,000 damages including but not limited to Thrift Savings matching/earnings FY2014/FY2013.

6. The DOC continuation of harassment and retaliation increased while Defendant attempted intimidation tactics demanding that the Plaintiff limit her EEO activities.

7. Plaintiff further asserts that the Defendant subjected Plaintiff to increased scrutiny by demanding observation while working, and sabotaging the observation results.

8. The DOC selectively excluded Ms. Garner FY2014 in uncommon tour sick leave, and treated her unfavorably in performance evaluation, earned awards from her top performances in her group, adversely impacting the terms and conditions of her employment.

9. Plaintiff further asserts that management retaliated against her for having complained about such discrimination, created a hostile working environment for her, harassed her, caused her to suffer major stress, and punished her for testifying and participating in Title VII lawsuits.

**Jurisdiction**

10. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

**Venue**

11. Venue is proper in this judicial district under 717 of Title VII, 42 U.S.C. §2000e-16 (2006); as Plaintiff was employed by the United States Department of Commerce (DOC) in Arizona at the time of her employment as a Field Representative. Defendant has more than 500 employees. Plaintiff's employment records are maintained by the DOC in the District of Columbia, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in Lakewood, Colorado district.

**Parties**

12. Plaintiff, Theresa Garner, an African-American female, is a citizen of the United States and a resident of the State of Arizona. At all times relevant to this suit, she was employed with DOC as a Field Representative since October 2010 and prior federal employment.

13. Penny Pritzker is currently the Secretary of the Department of Commerce of the United States.

14. Officials involved who are not being sued are Cathy L. Lacy, (Caucasian female) the Denver Regional Director (4th line supervisor), Mark Hendricks, (Caucasian male) Program Coordinator, (COR) (3rd line supervisor), Christine M. Curran, (Caucasian female) Survey Statistician Field, (FSS) (2nd line supervisor), Mark Zyniecki, Field Supervisor (FS) (Caucasian female) (1st line supervisor), Carla Mungai, Field Supervisor (FS) (Caucasian female) (1st line supervisor), within the DOC, subordinates of Cathy L. Lacy in the Denver Regional Office.

15. Plaintiff filed a timely charge of retaliation, Complaint reference date March 12, 2014, Complaint number 63-2014-00069, with the Equal Employment Office, ("EEO"), and requested a Final Decision (FAD) by the Agency. A FAD, Notice of Final Order was issued January 6, 2016, received by the Plaintiff on January 6, 2016. Plaintiff has met all administrative prerequisites for the bringing of this lawsuit.

**Statement of Facts**

16. Plaintiff, Theresa Garner, black female, is a career federal employee with over nine years of service with the Department of Commerce, (DOC) and Department of Natural Resources (DNR) and Department of Labor, Bureau of Labor Statistics Dual Appointee. (DOL)

17. All officials listed in paragraph 6 were immediately made aware by written notification of Ms. Garner's EEO protected activities, upon notification by the EEO, process service and Ms. Garner's discrimination notifications from the onset of lawsuit, Case No. 12-CV-01330-PHX-SRB.

18. Since filing a number of Title VII lawsuits against the DOC, Ms. Garner's supervisors listed herein, has treated her differently and unfavorably, and

19. Plaintiff's FY2014 income and benefits were reduced by $7000, and FY2013/FY2014 rightfully earned benefits denied, and

20. Defendant's harassment, hostile work environment and retaliation is consistent with previous patterns of unfounded accusations pertaining to Plaintiff's travel without the Agency's permission and/or knowledge and/or authorization. *See* District Court of Arizona Title VII Cases, Garner vs. Pritkzer. (*See* ROI Exhibit 6, page 151-175), and

21. On or about October 2, 2014, Defendant falsified and took Plaintiff's Personally Identifiable Identity and Information (PII) and booked an airplane ticket in her name booking a flight to and from Minnesota to Chicago, Illinois (ROI Exhibit 6, page 151-175), and

22. On or about October 2, 2014, Defendant falsified and took Plaintiff's Identity and Personally Identifiable Information(PII) and booked a hotel stay at Stay Bridge Suites by Holiday Inn in her name booking a two-day stay (ROI Exhibit 6, page 151-175), and

23. Plaintiff had no such required travel scheduled or pending reservation or stay pending; the unauthorized booking is part and partial of the continuation of pattern of manufactured travel schemes and devises to lure the Plaintiff into unauthorized travel ongoing since 2011/2012 more than 16 times (*See* ROI Exhibit 6, page 151-175), and

24. Defendant in order to confirm such booking with a government travel agency Carlston Travel, the Agency must confirm Plaintiff's Personally Identifiable Information (PII) name, age, address to do so, (ROI Exhibit 6, page 151-175) and

25. Defendant's pretext explanation for this unauthorized booking was that another 'Theresa Marie Garner' existed, who works for the Department of Commerce in Chicago Regional Office, where this matter originated/arose FY2010, when no such employee exists, or existed 2014 October, working for the Department of Commerce, (ROI Exhibit 6, page 151-175) and

26. Plaintiff requested the Defendant to produce the employee; Defendant could not produce the employee (ROI Exhibit 6, page 151-175), and

27. Defendant illegally impersonated Ms. Garner when calling into the travel agent, (ROI Exhibit 6, page 151-175), and

28. Defendant subjected Plaintiff to intentional harassment and retaliation and hostile work environment, (ROI Exhibit 6, page 151-175)

29. All of Plaintiff's coworkers in her work group FY2014 received recognition and awards excluding yearly Level 3 bonuses, and similarly situated coworker were given recognition, which excluded the Plaintiff who reached a high level of responses with a response rate of Level 5. Every year all employees are eligible for bonuses including FY2014.

30. Defendant set different terms and conditions on the Plaintiff in implementing the United States Anti-Discrimination Policy and EEO pay policies.

31. Defendant reduced Plaintiff's EEO activities, after the Plaintiff performed the activities related to continued and ongoing harassment and her internal investigation, new incidents related to the hostile environment and retaliation happening monthly.

32. Defendant put unlawful limitations on Plaintiff's EEO activities ~~only~~ restricting the Plaintiff to already approved ~~for~~ EEO hours and activities.

33. Defendant set different terms and conditions in employment conditions and implementing EEO activities.

34. Later, the DOC's official explanation for their limitation on EEO activities were that the Plaintiff must provide and request days in advance approval on EEO protected activities, and

35. Plaintiff's had no advance notice of the Defendant's discriminatory practices and events, but set impractical illogical advance notification limitations ~~restrictions~~ on the Plaintiff, limiting the Plaintiff ~~to~~ pursuit of protected EEO activities through intimidation tactics.

36. On or about March 2014, Defendant created more limitations of 10 hours of EEO activities per month with no explanation or consultation.

37. On or about March, 2014, Defendant failed to provide consultation and refused EEO activities and pay for a 2nd time in (2) months.

38. On or about April 29, 2014, Defendant refused to pay approved in advance EEO activities for a 3rd time in (2) months.

39. On or about April 2014, Defendant limited ~~lowered~~ EEO activities to 10 hours per pay period, previously 10 per week, excluding pay without notice from the last change and limitation without explanation or consultation.

40. On or about May 22, 2014, Christine M. Curran, Plaintiff 2nd line supervisor purported to blame the neutral EEO Investigator, Herbert L. Murray, for placing arbitrary limitations on Plaintiff's EEO hours.

41. A few days later, on or about May 24, 2014, Christine M. Curran, Plaintiff 2nd line supervisor blamed the *neutral* EEO employee, Cynthia Shipley, advising she was responsible for placing limits on Plaintiff's EEO activities and that the Agency was abiding by what is supposed to be a neutral entity.

42. On March 19, 2014, Plaintiff EEO activities were eliminated and not paid even though it was approved for 20 hours.

43. On or about April 2014, the Plaintiff requested a response from the Denver Regional Office Director on the limitation changing every week and failure to pay and received no response.

44. Later in May 2014, Defendant limit EEO activities to 10 hours every month without consultation or explanation and used this explanation to exclude previous EEO activities performed under the old standards set by the Defendant in April 2014, of 10 hours per pay period.

45. On or about March 2014-May 2014, Agency official consulted with the Plaintiff, approved EEO hours then removed the hours having already approved the hours, then made new limitations arbitrarily.

46. On or about May 22, 2014, the internal EEO investigation produced a 2000+ page Report of Investigation (ROI) requesting interrogatories and other documentation, and

47. Plaintiff 2nd level supervisor management and Christine M. Curran arbitrary set more limits to the request for Interrogatories and ROI report without consulting the Plaintiff or viewing the ROI report or Interrogatory questions.

48. On or about May 1 and 2nd, Defendant demanded that Plaintiff be observed during her survey interviews, (generally observation is reserved for struggling Field Representatives), Plaintiff was not struggling and has one of the best record at this time in her work group.

49. On or about June 15, 2014, 7 weeks after observation, Defendant after the observation refused to give the Plaintiff her observation results and scoring.

50. On or about May 24, 2014, during and after observation, Carla Mungai, Plaintiff's 1st line supervisor, attempted to delay results and attempted to sabotage the results claiming there were multiple errors during her observation when there were no such multiple errors, but could not produce documentation supporting this false claim, and

51. The Defendant left this false notation in the observation performance report.

52. After the Plaintiff on May 2014, insisted to receive the Defendant's purported errors Defendant finally released Plaintiff's results, then manufactured a pretext story that while

Plaintiff was observed during the observation she made errors but corrected them while interviewing.

53. Later after the fiscal year ended October 1, 2014, Defendant gave Ms. Garner the lowest unwarranted customer service score without any recorded deficiencies, lowered her Level 5 performance to the minimal lowest score Level 3, even though her observation had no verifiable deficiencies nor could the Defendant produce any deficiencies when requested.

54. On or about May 2016, Defendant sent a Fed Ex tracking number 8064-9847-4850, to Plaintiff home attempting to change the customer service score after 800+ days, after receiving this lawsuit, purporting to make whole the Plaintiff still excluding her performance awards, accurate score, performance bonus and left the remaining performance record untouched with multiple inaccuracies.

55. Defendant continuously and ongoing has treated Plaintiff unfavorably for having participated in protected EEO activities, with undeserved unjustifiable unexplained lowered performance ratings scores.

56. Defendant's provided a pretextual explanation of failing to provide the Plaintiff a timely observation and notification of results were that Field Representatives do not receive their observation or any information on how they were doing in the Field.

57. June 2014, Defendant began lowering Plaintiff workload to 3 cases, Plaintiff workload typically averages 8, @ 4.99 hours per case @ $19 dollars per hour.

58. Adverse actions arising from Defendant's actions include but is not limited to: Defendant lowered Plaintiff's pay for the entire month amounting to less than approximately $300.

59. Adverse actions arising from Defendant's actions include but is not limited to: On or about June 18, 2014, the unemployment office (Department of Unemployment Compensation Arizona) reported fraud overpayment lodged against the Plaintiff when the Agency provided inaccurate information regarding Plaintiff's earnings reporting to the Unemployment office mileage, which is not countable wages; based upon this false information provided, fraud charges were leverage against the Plaintiff.

59. Adverse actions arising from Defendant's actions include but is not limited to: On or about June 18, 2014, the Agency provided inaccurate information regarding Plaintiff's earnings reporting to the Unemployment office mileage which is not countable wages; based upon this false information provided fraud charges were leverage against the Plaintiff.

60. On or about August 2014, the unemployment office (Department of Unemployment) reported fraud overpayment lodged against the Plaintiff when the Agency provided inaccurate information regarding Plaintiff's earnings reporting to the Unemployment office mileage which is not countable wages; based upon this false information provided fraud charges were leverage against the Plaintiff.

61. Adverse actions arising from Defendant's actions include but is not limited to: On or about September 2014, the unemployment office (Department of Unemployment) reported fraud overpayment lodged against the Plaintiff when the Agency provided inaccurate

information regarding Plaintiff's earnings reporting to the Unemployment office mileage which is not countable wages; based upon this false information provided fraud charges were leverage against the Plaintiff.

62. Adverse actions arising from Defendant's actions include but is not limited to: On about September 2014, Officials at the Denver Regional Office notified Plaintiff 1st line supervisor that Ms. Garner resigned when she did not and asked her to send in a letter of resignation.

63. Adverse actions arising from Defendant's actions include but is not limited to: On about June 2014, Plaintiff 1st line supervisor Mark Zyniecki provided the entire Denver Regional Office Plaintiff's unemployment status from another employment confidential information violating their need to know policy and Privacy Act, and

64. Adverse actions arising from Defendant's actions include but is not limited to: When the Defendant received information of Plaintiff's employment status they began lowering her workload and hours.

65. Throughout 2014, and on about June 15, 20014, Defendant placed Ms. Garner entire workload of 16 cases under supervisory review and held Ms. Garner to standards and increase scrutiny that similarly situated Field Representatives were not held to.

66. Throughout the entire year of 2014, Defendant set an unrealistic expectation that Plaintiff's EEO activities should diminish, when hostile work environment, and harassment increased.

67. Throughout the entire year 2014, after having held Ms. Garner to high scrutiny the Regional Office provide Ms. Garner with the lowest performance score even though all 16 cases and most of her work was reviewed with no deficiencies.

68. Defendant placed a data collection device on Plaintiff's laptop subjecting her to increased scrutiny, and

69. Plaintiff's coworkers in comparison have not been subjected to this increased scrutiny.

70. On or about October 6, 2014, Plaintiff requested sick leave under employees with uncommon tours of duty.

71. Defendant denied Plaintiff sick leave and failed to provide a legitimate explanation for denying sick leave for the Plaintiff uncommon tour of duty status.

72. On or about October 7, 2014, Plaintiff provided Defendant 5 U.S.C. 6307, 5 CFR part 630, subpart B and D, basis for her sick leave request to the Defendant, Defendant failed to address uncommon leave.

73. FY2014, Ms. Garner maintained one of the highest levels of performance in her group, but received no bonuses (with the exception of the year-end bonus every person over Level 3 receives) no awards, lowered her overall performance scores to Level 3.

74. Plaintiff has EEO activities of 174 hours unpaid approximately $3600 excluding interest, directly caused by Defendant harassment, hostile work environment and retaliation.

75. The DOC's discriminatory/retaliatory treatment caused Ms. Garner to suffer from panic attacks and depression. Circa FY2014, Plaintiff Garner's doctor recommended that she telework, because the hostile work environment was causing her to suffer.

76. On or about June 27, 2014, Defendant reduced Plaintiff EEO activities after having approved the EEO activities. (R.O.I. Exhibit 7, Page 18)

77. FY2014, On or about July 17, 2014, Defendant reduced Plaintiff EEO activities to answer a set of Interrogatories and failed to consult with the Plaintiff. (R.O.I. Exhibit 7, Page 15)

77. Defendant excluded the Plaintiff from year-end bonus (excluding Level 3 and above bonus for all Field Representatives)

78. On or about 4/14/2014 pay for EEO activities for pay period 6 was not paid, no explanation by the Defendant who deleted pay.

79. On or about 3/30/2014 pay for EEO activities for pay period 6 was not paid, no explanation by the Defendant who deleted pay.

80. On or about 4/5/2014 pay for EEO activities for pay period 6 was not paid, no explanation by the Defendant who deleted pay.

81. Plaintiff received in writing approval for 10 hours for EEO response to interrogatories by never paid and removed by the Defendant.

82. Defendant on or about 4/16/2014, began to set limitations on the Plaintiff's EEO activities to 10 hours, having previously notified the Plaintiff of 10 hours per week.

**Count One**

**(Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.)**

83. The foregoing paragraphs are realleged and incorporated by reference herein.

84. The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

**Count Two**

**(Reprisal for Engaging in Protected Activities)**

85. The foregoing paragraphs are realleged and incorporated by reference herein.

86. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus.

**Count Three**

**(Hostile and Abusive Working Environment)**

87. The foregoing paragraphs are realleged and incorporated by reference herein.

88. The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

**Prayer for Relief**

WHEREFORE, the Plaintiff requests that the court award her:

(a) Retroactive back pay with all attendant back pay, and other emoluments of employment.

(b) A retroactive back pay award of $7,500, and prejudgment interest and other emoluments of employment.

(c) The sum of $300,000 in compensatory damages suffered because of the retaliation, harassment, hostile work environment and discrimination.

(d) Front pay,

(e) EEO back pay and prejudgment interest and other emoluments of employment;

(f) Thrift Saving earned matching and contributions at a rate of 5% matching, but for DOC management's discriminatory/retaliatory treatment of her; and

(g) Costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(h) Other damages and further relief as deemed just.

## JURY DEMAND

The Plaintiff requests trial by jury, Rule 38(a) of the Federal Rules of Civil Procedure.

## DEMAND FOR AN APPOINTED ATTORNEY

The Plaintiff requests an appointed attorney. § 706(f) (1) of the Act, 42 U.S.C. § 2000e-5(f) (1), § 706(k), 42 U.S.C. § 2000e-5(k) of the Fed.R.Civ.P.

Respectfully Submitted,

Theresa Garner

Propia Persona
1688 South 236th Drive

Buckeye, Arizona 85326
Tel. 623-386-8111

**CERTIFICATE OF SERVICE**

I, Theresa Garner, state that I am the plaintiff in this action and I served Defendant Representative via First Class United States mail the attached FAC complaint, 6/15/2016 to:

United States Justice Department
Assistant US Attorney
Ann E. Harwood
Two Renaissance Square
40 N. Central Avenue
Phoenix, AZ 85004-4408
602-514-7400

*Theresa Garner*

Theresa Garner